[No. 25946-3-III.   Division Three.   June 19, 2008.]

LAURIE A. BROWN, *Respondent*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant.*

Robert M. McKenna, *Attorney General*, and *Shannon C. Thomas, Assistant*, for appellant.

*Christine M. Weaver* (of *Law Office of Christine M. Weaver, PS*); and *Crystal B. Spielman*, for respondent.

¶1 BROWN, J. — The Department of Social and Health Services (DSHS) appeals a superior court order reversing a Board of Appeals (Board) decision that had reversed an administrative law judge's (ALJ's) ruling that Laurie Brown's actions in restraining a hostile adult at an assisted-living facility had not amounted to abuse. DSHS contends the superior court should have deferred to the agency's interpretation of abuse, which it argues is supported by substantial evidence. We agree that Ms. Brown's actions did not amount to abuse under the relevant standards and affirm.

## FACTS

¶2 The facts are mainly drawn from the unchallenged Board's findings that are verities on appeal. *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 100, 11 P.3d 726 (2000). Ms. Brown has been a care provider for the developmentally disabled since 1981. In October 2004, Ms. Brown was employed part-time by SL Start, an assisted living facility for vulnerable adults. SL Start, unlike Ms. Brown's regular employer, has a "no hands on policy" when dealing with residents. Tr. of Proceedings (June 23, 2005) at 139.

¶3 On October 11, Ms. Brown observed one of the residents, L., become agitated and attempt to kick her fellow resident, S., a fragile, diabetic adult. L. suffers from mild retardation, Tourette's syndrome, bipolar disorder, and is known to become verbally abusive and aggressive. As S. walked away, L. yelled at S., threatening to kill him. An SL Start staff member redirected L. into her apartment and attempted to calm her, but L. hit the staff member, knocking her glasses off, and called her an obscenity. Ms. Brown intervened, turning L. around and pushing her onto the bed. She then held L. down for a short period of time.

¶4 A few moments later, L. went outside and saw Ms. Brown talking to S. L. again went after S. Ms. Brown stood between the two and tried to calm L. L. began to hit and scratch Ms. Brown while repeatedly threatening to kill S.

Ms. Brown called out for a staff member to call 911. L. grabbed Ms. Brown's wrists. Ms. Brown performed a release move she had been trained to use to dislodge L.'s grip. L. then lost her balance and fell to the ground. She got back up and again went after S.

¶5 Ms. Brown again intervened. She grabbed L. with both hands and put her foot and leg behind L.'s legs, and then pushed L. onto the grass. Ms. Brown held L. down until she agreed to calm down. The two then went into L.'s apartment, where Ms. Brown apparently continued to calm L. by fixing her hair. Then, L. and Ms. Brown exited the apartment, holding hands. The police arrived, but no citations were issued. Ms. Brown was treated at a hospital for her injuries. L. apologized for injuring Ms. Brown.

¶6 The next day SL Start reported Ms. Brown's actions to the adult protective services division of DSHS. DSHS notified Ms. Brown by letter that she had abused a vulnerable adult. She appealed. Following an administrative hearing, the ALJ found no abuse. DSHS appealed to the Board, where the review judge concluded DSHS had proved abuse and reversed the ALJ. Ms. Brown successfully sought review by the superior court. The court held Ms. Brown acted appropriately during the hostile situation and not all physical contact amounted to abuse. DSHS appealed to this court.

ANALYSIS

¶7 The issue is whether Ms. Brown's actions meet the statutory definition of "abuse." DSHS contends the superior court should have deferred to the agency's interpretation of abuse and argues substantial evidence shows abuse.

¶8 Initially, Ms. Brown points to several of the Board's factual findings, arguing they were inaccurate and beyond the scope of review. She argues that some of the Board's conclusions of law are actually findings of fact. But Ms. Brown failed to file a notice of cross review as required under RAP 5.1(d) and failed to assign error to the findings

in accordance with RAP 10.3(g). While her arguments are waived, the administrative record marks the differences between the ALJ's and the Board's findings and conclusions.

¶9 We review an agency order in adjudicative proceedings under RCW 34.05.570(3), which provides, in part, that we must grant relief if the agency has erroneously interpreted or applied the law, or if the order is unconstitutional, is outside the statutory authority of the agency, is not supported by substantial evidence, or is arbitrary or capricious. "The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). Our factual review is confined to the record before the administrative law judge and the board. RCW 34.05.558; *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659 (2004). When a party asserts that an agency action is not supported by substantial evidence, we examine the record to determine if sufficient evidence exists to persuade a fair-minded person of the correctness of the order. *Port of Seattle*, 151 Wn.2d at 588. We do not weigh witness credibility or substitute our judgment for the agency's findings of fact. *Id.*

¶10 We apply de novo review to statutory interpretation questions. *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). Our primary goal is "to ascertain and give effect to legislative intent." *State v. Pac. Health Ctr., Inc.*, 135 Wn. App. 149, 158-59, 143 P.3d 618 (2006). Legislative intent is determined primarily from the statutory language, viewed "in the context of the overall legislative scheme." *Subcontractors & Suppliers Collection Servs. v. McConnachie*, 106 Wn. App. 738, 741, 24 P.3d 1112 (2001). If the statute's meaning is plain on its face, we give effect to that plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

¶11 The abuse of vulnerable adults act (AVA), chapter 74.34 RCW, was enacted to protect vulnerable adults from abuse, financial exploitation, and neglect. RCW 74.34.110. " 'Abuse' means the willful action or inaction that

inflicts injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult." RCW 74.34.020(2). Abuse includes "physical abuse," which is defined as "the willful action of inflicting bodily injury or physical mistreatment." RCW 74.34.020(2)(b). "Physical abuse" includes "striking with or without an object, slapping, pinching, choking, kicking, shoving, prodding, or the use of chemical restraints or physical restraints unless the restraints are consistent with licensing requirements, and includes restraints that are otherwise being used inappropriately." *Id.*

¶12 Both the definition of "abuse" and "physical abuse" require a willful action to inflict injury. Further, "abuse" may entail "unreasonable" confinement. Here, substantial evidence shows Ms. Brown did not willfully injure L.; nor did she unreasonably confine her. No Washington case is directly on point, but in Alaska, which has a similar AVA, the Supreme Court noted, "[I]f the harm results from improper action, we label the action abuse." *R.J.M. v. State*, 946 P.2d 855, 863 n.9 (Alaska 1997). Here, no improper action is shown. Ms. Brown properly intervened in the presence of danger to herself, her co-workers, and another vulnerable adult resident. Her actions were protective, not injurious or ill-intended, thus they were warranted and not abusive. Deference to an agency interpretation is inappropriate when the agency interpretation conflicts with the statute. *Dep't of Labor & Indus. v. Granger*, 159 Wn.2d 752, 764, 153 P.2d 839 (2007). Based on the plain language of RCW 74.34.020(2), Ms. Brown did not abuse L. The superior court properly found likewise.

¶13 Affirmed.

THOMPSON, J. PRO TEM., concurs.

¶14 KULIK, A.C.J. (dissenting) — The purpose of chapter 74.34 RCW is to protect vulnerable adults from abuse. RCW 74.34.005-.110. "Abuse" is any "willful action or inaction that inflicts injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult." RCW 74.34-

.020(2). "Physical abuse" includes "willful action of inflicting bodily injury or physical mistreatment [including] kicking [and] shoving." RCW 74.34.020(2)(b). "Willful" is a nonaccidental action or inaction that the perpetrator knew, or reasonably should have known, could cause harm, injury, or a negative outcome. WAC 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. Maliciousness is not required. *See* BLACK'S LAW DICTIONARY 1630 (8th ed. 2004).

¶15 L. is a person with several disabilities, who has difficulty communicating. She suffers from mental retardation, Tourette's syndrome, and bipolar disorder. Laurie Brown worked as a caregiver at the adult facility where L. lived. Ms. Brown was responsible for L.'s care and safety.

¶16 When L. became upset and assaultive, Ms. Brown "turned L. around and shoved L. onto the bed on her stomach. [Ms. Brown] held L. down on the bed for a short period of time." Board Record (BR) at 21. Later, Ms. Brown "grabbed L. with both hands and put her foot and leg behind L.'s legs. [Ms. Brown] pushed L. to the ground." BR at 22 (emphasis omitted). Witnesses described Ms. Brown's maneuver as "knocking [L.] down"[1] and then having a knee in L.'s back. Substantial evidence in the record supports this finding.

¶17 The Board of Appeals concluded that "the Department proved that [Ms. Brown] abused L. on October 11, 2004, because the Department proved that [Ms. Brown] shoved L. and held L. down on the bed. [Ms. Brown's] willful actions resulted in physical mistreatment and [Ms. Brown's] actions are explicitly prohibited by RCW 74-.34.020(2)(b)." BR at 30. That conclusion is easily supported, indeed required, by the Board of Appeals' findings of fact. *See* BR at 21-22.

¶18 Ms. Brown's actions were intentional and no one, including Ms. Brown, suggests otherwise. Ms. Brown volunteered to show her co-workers her "take down" move. BR at 22.

---

[1] Tr. of Proceedings (June 23, 2005) at 169.

¶19 We review an administrative agency's legal conclusions de novo. *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). The test is whether the agency has "erroneously interpreted or applied the law." RCW 34.05.570(3)(d).

¶20 The statute's meaning is plain here. This court must give effect to that plain meaning. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). Chapter 74.34 RCW clearly and precisely prohibits physical mistreatment of vulnerable adults. Moreover, the statute has no exceptions to the prohibition against abuse. Thus, the majority's holding that Ms. Brown's actions were protective and warranted—and, therefore, not abusive—is inconsistent with the clear language of the statute. Accordingly, I respectfully dissent.