# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ALICE KARANJAH, | No. 48666-1-II |
| Respondent, | |
| v. | |
| DEPARTMENT OF SOCIAL AND HEALTH SERVICES (DSHS), | PUBLISHED OPINION |
| Appellant. | |

MELNICK, J. — A superior court reversed a board of appeals (BOA) decision that Alice Karanjah, a state licensed nursing assistant, abused a vulnerable adult. The Department of Social and Health Services (DSHS) appeals. We conclude that even though substantial evidence supported the challenged findings of fact, the BOA erroneously interpreted and applied the law. Therefore, the BOA's order was arbitrary and capricious. Accordingly, we reverse the BOA's order and affirm the superior court's order. We also affirm the superior court's award of Karanjah's attorney fees and award her attorney fees on appeal.

## FACTS

### I.   THE INCIDENT[1]

Karanjah worked with vulnerable adults at Pioneer Place Alzheimer Residence, an assisted living facility in Tacoma. She received training on dementia and mental health, dealing with difficult behavior and abuse.

---

[1] The facts are from the unchallenged BOA findings that are verities on appeal. *Postema v. Pollution Control Hr'gs Bd.*, 142 Wn.2d 68, 100, 11 P.3d 726 (2000).

Ivan,[2] a 69-year-old resident of Pioneer Place, received diagnoses of vascular and Alzheimer related dementia. He "could not be re-directed, he was inappropriate in his actions, and could be very aggressive and combative." Clerk's Papers (CP) at 4. Ivan had a history of entering other residents' rooms and trying to get into their beds. These actions sometimes interfered with residents' oxygen equipment.

At approximately midnight on January 3, 2011, Ivan entered a female resident's room, attempted to get into her bed, and tried to sleep in her bed with her. The partially paralyzed female resident could not speak; however, she made a sound that alerted Karanjah for assistance. Karanjah and Angela Varney, another caregiver, removed Ivan from the room.

At approximately 1 A.M., Karanjah heard a trainee caregiver, Jalisa Harris, call for help. Ivan and Harris were in the utility room used for soiled items. Ivan wore only a t-shirt and a diaper. Ivan held onto Harris's wrist and tried to hit her. Soiled diapers were all over the floor because Ivan had pulled them out of the garbage can. He had fecal matter on his hands. Karanjah managed to convince Ivan to let go of Harris.

Witnesses observed Karanjah interlock Ivan's hands behind his back and push or shove him down a 200-foot long hallway to his room. Varney observed Ivan flailing his arms as Karanjah pushed him. He hit his left wrist on the doorjamb of his room. Varney saw Karanjah close the door and walk away. Varney also saw that Ivan had a red wrist that started to swell.

Karanjah claimed she did not witness Ivan hit his wrist, and she denied holding his wrists or walking behind him. She said that she held him with her right hand on his right wrist and her left hand below his left shoulder. She also denied pushing Ivan.

---

[2] Only the resident's first name is used for confidentiality reasons.

II.    PROCEDURAL HISTORY

DSHS investigated the incident and issued a report in April 2011.  In the report, Corey Ellis, the director of nursing services, told investigators that Ivan was not re-directable or appropriate in his actions, and could "be very aggressive and/or combative."  CP at 327.

The parties entered into a stipulation to an informal disposition, accepted by the Secretary of Health.   In the stipulation, Karanjah did not admit to any of the allegations, but she acknowledged "that a finding of unprofessional conduct or inability to practice based on the above allegations, if proven, would constitute grounds for discipline under RCW 18.130.180(4), (7) and WAC 246-841-400(4)(a), (c), (d) and (6)(g)."  CP at 312.  The parties did not intend the stipulation to be construed as a finding of unprofessional conduct or an inability to practice.  The parties agreed that Karanjah's credentials to practice as a registered nursing assistant would be placed on probation for 12 months.  Numerous conditions attached to the probation.

On April 17, 2012, DSHS issued a notice of preliminary finding that Karanjah physically abused a vulnerable adult, Ivan.  Karanjah requested a hearing to contest the matter.

On May 31, a health law judge terminated the probation and issued a credential without conditions or limitations.  Karanjah had substantially complied with the terms and conditions of the informal disposition stipulation.

A.    INITIAL DECISIONS

An administrative law judge (ALJ) held a hearing on the contested preliminary finding. The ALJ issued findings of fact and conclusions of law and an initial order affirming DSHS's preliminary finding of physical abuse.

Karanjah filed a petition for review with the BOA.  She argued that the BOA should modify the findings of fact not supported by the evidence, conclude that no substantial evidence existed

3

to conclude Karanjah was abusive, and correct the erroneous application of the law governing abuse.

The BOA affirmed the ALJ's initial order. Karanjah filed a petition for judicial review of the BOA order with the superior court.

The superior court reversed the BOA decision and remanded the case for further fact finding and legal analysis. The superior court concluded that the agency erroneously interpreted or applied the law because it failed to properly apply the holding of *Brown v. Dep't. of Soc. & Health Servs.*, 145 Wn. App. 177, 185 P.3d 1210 (2008). It also concluded that substantial evidence did not support the BOA decision, including that Ivan sustained an injury. Finally, the superior court ruled that the BOA decision was arbitrary and capricious because the ALJ "expressly declined to consider all of the surrounding facts and circumstances, based on the existing record." CP at 547.

The superior court ordered on remand that DSHS should determine whether Karanjah's contact or restraint of Ivan was reasonable in light of all of the surrounding circumstances, including Karanjah's obligations as a state nursing assistant, Ivan's patient history which included a history of elopement, and Ivan's risk of harm to himself and others. It also ordered the BOA to determine whether Karanjah's actions caused Ivan's injury.

2.     REMAND DECISIONS

By stipulation, the parties requested that the BOA remand the case to the Office of Administrative Hearings (OAH) for another evidentiary hearing. Per the stipulation, the scope of the hearing was limited to consideration of the issues specifically identified in the superior court remand order.

The BOA remanded the matter to the OAH for a hearing.  The BOA instructed the parties to provide analysis for the ALJ consistent with an unpublished decision,[3] to provide other relevant authority, and specify which finding of fact in the final order it alleged the superior court reversed.

An ALJ conducted a new hearing.  Varney, Ivan's assigned care provider, testified that on the evening in question, she heard Ivan screaming in Spanish.  She observed Karanjah pushing Ivan from behind and holding his shirt for less than 20 seconds.  Ivan resisted her attempts to push him forward by digging in his heels.  Varney described Ivan's arms as "swinging . . . back and forth up above his head . . . almost to the side" of his body.  CP at 399.  Ivan flailed his arms the entire time Karanjah pushed him down the hallway.  She stated that Ivan tried to grab the doorjamb to stop from going into his room, but he hit his left wrist on it.  Then Karanjah put Ivan in his room, closed the door, and walked away.  Varney's written statement from shortly after the incident, however, documented her saying, "Ivan's hands were loose, flailing his arms, and reaching back to get her.  He probably would have hurt her."  CP at 402.  Varney described Ivan as a "very violent person."  CP at 402.

Karanjah testified that she never pushed Ivan, she only walked behind him.  Karanjah did not leave Ivan in the hallway because he had soiled hands and he could go into other patients' rooms and spread the fecal matter.  Karanjah was supposed to prevent the spread of bacteria.  Kathy Weed Houck, the nursing assistant program manager for the occupational therapy board, confirmed that nursing assistants are required to prevent the spread of feces.

The ALJ affirmed DSHS's preliminary finding that Karanjah physically abused Ivan.  Karanjah filed a petition for review with the BOA.

---

[3] *In re Aleksentsev*, No. 31255-1-III (Wash. Ct. App. May 8, 2014 (unpublished), http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion&filename=312551MA J.

The BOA entered a final order affirming DSHS's preliminary finding of abuse. Its findings of fact and conclusions of law were based on the initial order on remand.

Karanjah filed another petition for judicial review of the BOA order by the superior court. She requested reasonable attorney fees pursuant to the Washington State Equal Access to Justice Act (EAJA), RCW 4.84.350. Karanjah also filed a separate motion for attorney fees and costs pursuant to EAJA.

The superior court set aside the BOA order and reversed DSHS's finding of physical abuse of a vulnerable adult against Karanjah. The superior court also awarded Karanjah $25,000 for attorney fees and costs. The superior court found that DSHS's action in the matter was not substantially justified. DSHS appeals the superior court's order.

ANALYSIS

MOTION TO STRIKE STATEMENT OF ADDITIONAL AUTHORITY

DSHS filed a statement of additional authority. RAP 10.8. It included one case that DSHS identified as being an unpublished case from Washington. Karanjah filed a motion to strike the statement of additional authority.

GR 14.1(a) governs the citation to unpublished opinions and states in pertinent part, "Unpublished opinions of the Court of Appeals have no precedential value and are not binding on any court. However, unpublished opinions of the Court of Appeals filed on or after March 1, 2013, may be cited as non-binding authorities, if identified as such by the citing party, and may be accorded such persuasive value as the court deems appropriate."

We interpret court rules in the same way as we interpret statutes and begin with the plain language of the rule. *State v. Otton*, 185 Wn.2d 673, 681, 374 P.3d 1108 (2016); *State v. Hawkins*,

181 Wn.2d 170, 183, 332 P.3d 408 (2014). The plain language of GR 14.1(a) merely requires that the citing party advise the courts that the case is unpublished.

Karanjah cites to *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 544, 389 P.3d 731 (2017), that said,

> [W]hen citing to unpublished opinions under GR 14.1, either in this court or in the trial court, a party must do more than simply identify the opinion as unpublished. The party must point out that the decision has no precedential value, is not binding on any court, and is cited only for such persuasive value as the court deems appropriate. The party should also cite GR 14.1.

With due respect to the panel that decided *Crosswhite*, we conclude that based on the plain language of GR 14.1(a), a party may cite an unpublished case from this court and merely identify it as unpublished. Nothing more is required.

## BOA'S DECISION

I.      WASHINGTON ADMINISTRATIVE PROCEDURE ACT (WAPA) REVIEW

We review this case under WAPA, chapter 34.05 RCW. This appeal is a petition for judicial review of a final agency order under RCW 34.05.570(3). RCW 34.05.570(3) states in relevant part:

> The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:
>        . . . .
>        (d) The agency has erroneously interpreted or applied the law;
>        (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;
>        . . . .
>        (i) The order is arbitrary or capricious.

"The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). Our factual review is confined to the record before the ALJ and BOA. RCW 34.05.558; *Brown*, 145 Wn. App. at 182.

When reviewing an agency decision, we apply "the standards of chapter 34.05 RCW directly to the agency's record without regard to the superior court decision." *Goldsmith v. Dep't of Soc. & Health Servs.*, 169 Wn. App. 573, 584, 280 P.3d 1173 (2012). When reviewing an administrative agency decision, we review issues of law de novo. *Ames v. Health Dep't Med. Quality Health Assurance Comm'n*, 166 Wn.2d 255, 260, 208 P.3d 549 (2009). We may "then substitute our judgment for that of the administrative body on legal issues." *Ames*, 166 Wn.2d at 260-61. Additionally, although we review legal issues de novo, we give "substantial weight to the agency's interpretation of the law it administers, particularly where the issue falls within the agency's expertise." *Goldsmith*, 169 Wn. App. at 584.

II.     RELEVANT LEGAL PRINCIPLES

The legislature enacted the Abuse of Vulnerable Adults Act (AVA)[4] to protect vulnerable adults from abuse, financial exploitation, and neglect. RCW 74.34.110. "'Abuse' means the willful action or inaction that inflicts injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult" and includes the "improper use of restraint against a vulnerable adult." Former RCW 74.34.020(2) (2010). Abuse includes "[p]hysical abuse," which is defined as "the willful action of inflicting bodily injury or physical mistreatment." Former RCW 74.34.020(2)(b). Physical abuse includes "striking with or without an object . . . shoving, prodding, or the use of chemical restraints or physical restraints unless the restraints are consistent with licensing requirements." Former RCW 74.34.020(2)(b).

Under *Brown*, "[b]oth the definition of 'abuse' and 'physical abuse' require a willful action to inflict injury." 145 Wn. App. at 182. Former RCW 74.34.020 does not define "willful" but

---

[4] Chapter 74.34 RCW.

WAC 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[5] does. "Willful" is defined as "the nonaccidental action or inaction by an alleged perpetrator that he/she knew or reasonably should have known could cause harm, injury or a negative outcome." WAC 388–71–0105. In addition, willful action occurs when "'a person acts knowingly with respect to the material element of an offense.'" *Crosswhite*, 197 Wn. App. at 551 (quoting *State v. Bauer*, 92 Wn.2d 162, 168, 595 Wn.2d 544 (1979)). Only if the harm resulted from a willful action or inaction is it labeled as abuse. *Brown*, 145 Wn. App. at 183. "[A]n abuser must knowingly inflict injury." *Crosswhite*, 197 Wn. App. at 551. "'Nonaccidental' is reasonably synonymous with 'willful.'" *Crosswhite*, 197 Wn. App. at 553.

> It is critical to properly identify the "knowing action" that must be nonaccidental, however. As previously discussed, under RCW 9A.08.010(4), "[a] requirement that an offense be committed wil[l]fully is satisfied if a person acts knowingly *with respect to the material elements of the offense*." (Emphasis added.) Yelling at a vulnerable adult that is nonaccidental and that nonaccidentally inflicts a type of harm identified by RCW 74.34.020(2) is willful. Yelling that is nonaccidental but that causes a statutory harm *accidentally* or *without purpose* is not.

*Crosswhite*, 197 Wn. App. at 553. A willful action that inflicts injury is necessary to prove abuse. *Crosswhite*, 197 Wn. App. at 553.

III.    SUBSTANTIAL EVIDENCE

Karanjah argues that substantial evidence does not support the BOA's 2015 final order. She specifically challenges findings of fact 23, 24 and 28, and conclusions of law 12 and 17. She also challenges whether substantial evidence supports the BOA's findings of abuse. We conclude that substantial evidence supports the challenged findings of fact, but the findings do not support a conclusion of abuse.

---

[5] This WAC section contains definitions applicable to Adult Protective Services.

A.    STANDARD OF REVIEW

We review factual findings for substantial evidence. *Brown*, 145 Wn. App. at 182. Substantial evidence means evidence that "is sufficient to persuade a rational, fair-minded person that the finding is true." *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012). We review any legal conclusions that flow from the findings de novo. *Cantu*, 168 Wn. App. at 21. "Findings of fact labeled as conclusions of law will be treated as findings of fact when challenged on appeal." *Morgan v. Dep't of Soc. & Health Servs.*, 99 Wn. App. 148, 152, 992 P.2d 1023 (2000). We do not weigh witness credibility or substitute our judgment for the agency's findings of fact. *Brown*, 145 Wn. App. at 182.

B.    SUBSTANTIAL EVIDENCE SUPPORTS THE FINDINGS OF FACT

1.    The Law of the Case

We first address Karanjah's argument that the law of the case doctrine applies. She argues that any findings of fact or findings of fact labeled as conclusions of law that were not reversed by the superior court on remand became verities on remand and are the law of the case.

"Generally, the law of the case doctrine precludes this court from reconsidering the same legal issue already determined as part of a previous appeal." *Lian v. Stalick*, 115 Wn. App. 590, 598, 62 P.3d 933 (2003). The law of the case doctrine is inapplicable here because the doctrine applies to law, not facts. *Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 113, 829 P.2d 746 (1992).

However, the parties entered into a stipulation that says, in pertinent part,

> To the extent the agency's findings of fact and conclusions of law in its *Review Decision and Final Order* were not reversed by the Superior Court, those findings of fact and conclusions of law are not at issue on remand to the OAH. The OAH shall make no findings of fact or conclusions of law contrary to the findings of fact and conclusions of law in the [order] that were not reversed by the Superior

Court. The OAH may make additional findings of fact and conclusions of law to the extent necessary to comply with the Superior Court's order.

CP at 175. The superior court limited the remand to whether any actual injury to Ivan occurred and whether Ivan's contact or restraint by Karanjah was reasonable in light of all of the surrounding circumstances. Therefore, we consider the findings of fact not reversed by the superior court to be verities because of the parties' stipulation and the superior court's order.

### 2. Finding of Fact 23

Karanjah argues that finding of fact 23 contradicts a finding of fact the superior court did not reverse on remand. We disagree.

Finding of fact 23 stated, that Karanjah was "shoving him through" the door. CP at 10. The finding Karanjah argues was undisturbed by the superior court stated: She then "released him at the door of his room, and he injured himself while flailing his arms, most likely for balance." Reply Br. of Resp't at 10 (quoting CP at 236) (footnote omitted)). Karanjah argues that the word "released" contradicts finding of fact 23, which states that she was "shoving him through" the door. Br. of Resp't at 39 n.18.

First, we address whether the findings are inconsistent. They are not. Karanjah could have both released Ivan and pushed him into the room before he hit his wrist. Finding of fact 23 merely clarified how the injury occurred. Therefore, this argument fails.

Next, we consider whether substantial evidence supports finding of fact 23. Varney testified that Karanjah "push[ed Ivan] through the doorway when he put his hands out, and that's when he hit" his wrist. CP at 401. We conclude that substantial evidence supports this finding.

11

3.      Finding of Fact 24

Karanjah argues substantial evidence does not support finding of fact 24 because Ivan did not actually sustain an injury.  She also argues no nexus exists between her actions and any injury.  We disagree.

Finding of fact 24 stated, "Ivan's wrist was injured when he slammed it into the doorjamb of his room.  Angela Varney inspected the wrist and saw that it was red and swollen."  CP at 10 (footnote omitted).  The finding does not identify whether Karanjah caused the injury, it only states that Ivan sustained an injury; therefore, her nexus argument fails.

At the hearing on remand, Varney testified that "[Karanjah] was behind Ivan and had a hold of his shirt and was pushing him into the room.  And his arms were flailing, and he hit the doorjamb."  CP at 399.  She testified that as Karanjah pushed Ivan through the doorway, he put his hands out and hit his wrist.  She described his arms as "swinging . . . back and forth up above his head . . . almost to the side" of his body.  CP at 399.  Varney opined that if Karanjah had not shoved Ivan, he would not have hit his wrist.

In addition to Varney's testimony, other evidence supports finding of fact 24.  Leticia Simmons, another employee, wrote three reports.  In one, she noticed some redness and swelling after Ivan was slammed against the doorjamb.  In another, Simmons reported that a staff person saw Karanjah push Ivan into his room.  He reached out with his left hand and the door slammed his wrist against the doorjamb.  Ivan suffered mild discomfort and redness on his left wrist, but no swelling.  In the third, Simmons noted redness and swelling on Ivan's wrist.

We conclude that substantial evidence supports a finding that Ivan injured his wrist during the occurrence.

4.    Finding of Fact 28

Karanjah argues substantial evidence does not support finding of fact 28.  We disagree.

Finding of fact 28 stated, "After [Karanjah] returned Ivan to his room, she left him there alone and undressed with stool still on his hands.  She did not notify other staff members that his hands needed to be cleaned."  CP at 11.

In the findings of fact not reversed by the superior court on remand, Varney testified that Karanjah put Ivan in his room, closed the door, and walked away.  Ivan wore a t-shirt and a diaper.  The BOA found Varney's testimony credible in both the first hearing and on remand.

In Karanjah's written statement, which the BOA found to be credible, Karanjah stated that she asked Varney for assistance with Ivan.  Karanjah also testified that Ivan had fecal matter on his hands.  Yet in the March 2011 DSHS investigation memorandum, Karanjah stated that she did not ask for help from other staff members.[6]  Regardless of Karanjah's testimony to the contrary, substantial evidence supports finding of fact 28.

5.    Conclusion of Law 12

Karanjah argues that conclusion of law 12 includes findings of fact not supported by substantial evidence.  We disagree.

Conclusion of law 12 stated in relevant part:

> Even if it could not be determined if or how Ivan's wrist was injured, [Karanjah's] actions in restraining and shoving Ivan, if determined not to be an acceptable defense against a physical abuse allegation under the *Brown* [145 Wn. App. 177] analysis, constituted physical mistreatment because that term defines "physical abuse" which is further clarified to include the acts of unauthorized restraining and shoving.  If [Karanjah's] restraining and shoving Ivan is neither proper nor justified under the *Brown* analysis, then her actions constituted physical mistreatment.

---

[6] Karanjah did testify at the first hearing that she asked Varney to "please take care of [Ivan]."  CP at 500.

13

CP at 17.

At oral argument, both parties agreed that this determination was a legal issue that we review de novo. We agree with the parties. Because Karanjah's argument is based on an incorrect premise, i.e. that this conclusion is actually a finding of fact, we do not analyze it for substantial evidence. Rather, we analyze it to see if the conclusion of law flows from the findings of fact.

### 6. Conclusion of Law 17

Karanjah challenges the footnote in conclusion of law 17, in particular the following language: "[T]his history can, somewhat ironically, explain [Karanjah's] frustration, and thus over assertiveness, in using physical restraint and force (shoving) to compel Ivan into his own bedroom." Br. of Resp't at 43 (citing CP at 20 n.90).

Whether or not Karanjah was frustrated and overassertive are findings of fact. After reviewing the record, we agree that substantial evidence does not support these findings and we do not consider them in determining whether the conclusion of law flows from the findings of fact.

## III. ERRONEOUS INTERPRETATION OR APPLICATION OF THE LAW

Karanjah argues that the BOA erroneously interpreted and applied the holding in *Brown* by conflating "[p]rotective" actions with "[d]efensive" actions. Br. of Resp't at 29. She also argues that the BOA failed to consider her legal obligations under other statutory and regulatory authorities, and accordingly, erred in interpreting and applying the law in this case. We agree with Karanjah.

### A. STANDARD OF REVIEW

As stated above, when reviewing an administrative agency decision, we review issues of law de novo. *Ames*, 166 Wn.2d at 260. However, we "give substantial weight to the agency's

interpretation of the law it administers, particularly where the issue falls within the agency's expertise." *Goldsmith*, 169 Wn. App. at 584.

We review statutory interpretation questions de novo. *Brown*, 145 Wn. App. at 182. Our primary goal is "to ascertain and give effect to legislative intent." *State v. Pac. Health Ctr., Inc.*, 135 Wn. App. 149, 158-59, 143 P.3d 618 (2006). "Legislative intent is determined primarily from the statutory language, viewed 'in the context of the overall legislative scheme.'" *Brown*, 145 Wn. App. at 182 (quoting *Subcontractors & Suppliers Collection Servs. v. McConnachie*, 106 Wn. App. 738, 741, 24 P.3d 1112 (2001)). "If the statute's meaning is plain on its face, we give effect to that plain meaning." *Brown*, 145 Wn. App. at 182.

### B.     THE BOA ERRED IN INTERPRETING OR APPLYING THE LAW

The legal consideration at issue is whether Karanjah's actions were proper and justified under the *Brown* decision, taking into consideration the surrounding circumstances. As stated above, at oral argument, both parties agreed that the determination of whether Karanjah's actions were protective was a legal issue that we review de novo. Therefore, if, considering the surrounding circumstances, Karanjah acted in a protective manner, not an injurious or ill-intended manner, then her actions were justified and not abusive. *Brown,* 145 Wn. App. at 183.

In *Brown*, DSHS found that Brown, a care provider for developmentally disabled people, abused a vulnerable adult. 145 Wn. App. at 181. Brown observed a resident, named L., known to be verbally abusive and aggressive, attempt to kick her roommate, named S. *Brown*, 145 Wn. App. at 180. L. threatened to kill S. *Brown*, 145 Wn. App. at 180. Another staff member tried to redirect L., but she hit the staff member, knocked off her glasses, and swore at her. *Brown*, 145 Wn. App. at 180. Brown intervened, pushed L. onto a bed, and held her down for short period of time. *Brown*, 145 Wn. App. at 180.

L. then observed Brown talking to S., and L. again went after S. *Brown*, 145 Wn. App. at 180. L. began to hit and scratch Brown because of her intervention. *Brown*, 145 Wn. App. at 180. She repeatedly threatened to kill S. *Brown*, 145 Wn. App. at 180. L. grabbed onto Brown's wrists, and Brown dislodged her grip by performing a release move. *Brown*, 145 Wn. App. at 181. L. fell to the ground, but again went after S. *Brown*, 145 Wn. App. at 181. Brown again intervened. *Brown*, 145 Wn. App. at 181. She grabbed L. with both hands, put her foot and leg behind L.'s legs, and pushed her onto the grass. *Brown*, 145 Wn. App. at 181. Brown held L. there until she agreed to calm down. *Brown*, 145 Wn. App. at 181.

*Brown* held the care provider did not commit physical abuse. 145 Wn. App. at 183.

> Both the definition of "abuse" and "physical abuse" require a willful action to inflict injury. Further, "abuse" may entail "unreasonable" confinement. Here, substantial evidence shows Ms. Brown did not willfully injure L.; nor did she unreasonably confine her. No Washington case is directly on point, but in Alaska, which has a similar AVA, the Supreme Court noted, "[I]f the harm results from improper action, we label the action abuse." *R.J.M. v. State*, 946 P.2d 855, 863 n. 9 (Alaska 1997). Here, no improper action is shown. Ms. Brown properly intervened in the presence of danger to herself, her co-workers, and another vulnerable adult resident. Her actions were protective, not injurious or ill-intended, thus they were warranted and not abusive.

*Brown*, 145 Wn. App. at 183. Physical abuse requires a finding of a willful action that inflicts bodily injury or physical mistreatment. Former RCW 74.34.020(2)(b).

However, contrary to DSHS's argument, *Brown* did not establish a "defense."[7] The case does not stand for the notion that someone in Karanjah's position must prove that she was either defending herself or others. If the person acted in a protective, not ill-intended manner, it is not abuse. *Brown*, 145 Wn. App. at 183.

---

[7] DSHS also seems to argue that her actions must have been "necessary" yet no relevant case law established such a standard.

In its conclusions of law, the BOA dedicated an entire section to a discussion of the "defense of self defense and defense of others." CP at 19. In the section, the BOA described *Brown*, and then concluded that "[t]here simply was not the necessary immediacy of defensive action in this case that the Court of Appeals found was present in the *Brown* case." CP at 20. Based on that determination, the BOA concluded that Karanjah's actions constituted abuse. We conclude that the BOA erred in interpreting the law.

We also conclude that the BOA erred in its application of the law because Karanjah's actions constituted protective action and were not improper.

To constitute abuse, Karanjah's actions must have been willful, or they must have been intended to injure Ivan or knowingly inflict injury on him. Karanjah may have pushed Ivan into the doorjamb, but, based on the findings of fact, she had no intent to injure him. Ivan's injury resulted from an accident. Karanjah did not willfully cause the injury. The findings of fact do not support a conclusion that Karanjah knowingly pushed Ivan into the doorjamb to inflict injury. No findings of fact created a clear nexus between Karanjah's actions and Ivan's injury.

Ivan, similar to the resident in *Brown*, was known to be inappropriate in his actions, could not be redirected, and could be very aggressive and combative. Based on the totality of the circumstances, Karanjah's actions were clearly protective and not knowingly injurious or ill-intended. Nothing in the record supports a conclusion that her actions were ill-intended. She took reasonable actions under *Brown* and therefore, did not abuse Ivan.

In addition, Karanjah had a duty as a nursing assistant to protect against the spread of fecal matter. *See* WAC 246-841-400(8).[8] Ivan had fecal matter on his hands. He also had a grip on

---

[8] Standards of practice and competencies for nursing assistants. WAC 246-841-400.

Harris and was trying to hit her. Karanjah testified that she was concerned about the risk that Ivan would spread the fecal matter into the other residents' rooms.

Thus, we conclude that Karanjah's actions were reasonable and protective and not improper. They are similar to the actions in *Brown*. Karanjah protected herself and others when she walked Ivan down the hallway and restrained his hands. When viewed in the context of Ivan's history and Karanjah's duty to prevent him from going into other residents' rooms and spreading fecal matter, she acted reasonably.

Therefore, we conclude that the BOA misinterpreted the law in *Brown* by requiring Karanjah to show circumstances amounting to self-defense or defense of others. We also conclude that Karanjah's actions did not constitute abuse. The BOA erred in both its interpretation and application of the law.

IV. ARBITRARY AND CAPRICIOUS

Karanjah argues that the BOA's order was arbitrary and capricious because it unnecessarily narrowed the scope of evidence it considered and failed to consider whether Karanjah's actions were protective. We agree.

We review whether a decision is arbitrary and capricious de novo. *Stewart v. Dep't of Soc. & Health Servs.*, 162 Wn. App. 266, 273, 252 P.3d 920 (2011). "A decision is arbitrary and capricious if it is willful and unreasoning and disregards or does not consider the facts and circumstances underlying the decision." *Stewart*, 162 Wn. App. at 273. However, a "decision is not arbitrary or capricious if there is room for more than one opinion and the decision is based on honest and due consideration, even if this court disagrees with it." *Stewart*, 162 Wn. App. at 273. "'Action taken after giving respondent ample opportunity to be heard, exercised honestly and upon due consideration, even though it may be believed an erroneous decision has been reached, is not

arbitrary or capricious.'" *Heinmiller v. Dep't of Health*, 127 Wn.2d 595, 609-10, 903 P.2d 433 (1995) (quoting *State Med. Disciplinary Bd. v. Johnston*, 99 Wn.2d 466, 483, 663 P.2d 457 (1983)).

The scope of review under this standard is "very narrow" and the party seeking to demonstrate that action is arbitrary and capricious "must carry a heavy burden." *Pierce County Sheriff v. Civil Serv. Comm'n of Pierce County*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983).

Here, because we determined that the BOA erred in its conclusions of law and application of the law and Karanjah did not abuse Ivan, we also conclude that Karanjah has shown that the decision was arbitrary and capricious. The BOA disregarded the risk Ivan posed to others, Karanjah, and himself, and that the injury incurred was accidental and not ill-intentioned. Karanjah's actions were protective. The BOA disregarded circumstances that showed Karanjah acted in a protective manner and required Karanjah to prove something not warranted by law under *Brown*. Thus, we conclude that the BOA's decision was in disregard of facts and circumstances that made Karanjah's actions protective as a matter of law.

## V.     ATTORNEY FEES IN SUPERIOR COURT

Karanjah argues that we should affirm the attorney fees awarded to her by the superior court under EAJA. We agree.

### A.     LEGAL PRINCIPLES

"In 1995, the legislature enacted the EAJA, chapter 4.84 RCW, to ensure citizens a better opportunity to defend themselves from inappropriate state agency actions." *Costanich v. Dep't of Soc. & Health Servs.*, 164 Wn.2d 925, 929, 194 P.3d 988 (2008). Under the EAJA,

> Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified

19

party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

RCW 4.84.350(1).

"To be entitled to an award of attorney fees under the EAJA, a qualified party is deemed to have prevailed if that party obtained relief on a significant issue." *ZDI Gaming, Inc. v. State ex rel. Wash. State Gambling Comm'n*, 151 Wn. App. 788, 813, 214 P.3d 938 (2009), *aff'd*, 173 Wn.2d 608, 268 P.3d 929 (2012). A qualified individual is a person whose net worth does not exceed $1 million. RCW 4.84.340(5). Under the statute, the reasonable attorney fees cannot exceed $25,000. RCW 4.84.350(2). We review a fee awarded under the EAJA for abuse of discretion and will not disturb that award absent a clear showing of abuse of that discretion. *ZDI Gaming*, 151 Wn. App. at 813.

B.    THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION

Because Karanjah prevailed in the superior court, we determine whether the superior court abused its discretion by looking at whether DSHS's actions here were "substantially justified" under RCW 4.84.350(1). The other requirements under EAJA are not disputed by the parties.

"Substantially justified means justified to a degree that would satisfy a reasonable person." *Moen v. Spokane City Police Dep't*, 110 Wn. App. 714, 721, 42 P.3d 456 (2002). The standard "'requires the State to show that its position has a reasonable basis in law and fact.'" *Silverstreak, Inc. v. Dep't of Labor & Indus.*, 159 Wn.2d 868, 892, 154 P.3d 891 (2007) (quoting *Cobra Roofing Serv., Inc. v. Dep't of Labor & Indus.*, 122 Wn. App. 402, 420, 97 P.3d 17 (2004)). "That is, it need not be correct, only reasonable." *Raven v. Dep't of Soc. & Health Servs.*, 177 Wn.2d 804, 832, 306 P.3d 920 (2013). "The relevant factors in determining whether the Department was substantially justified are, therefore, the strength of the factual and legal basis for the action, not

the manner of the investigation and the underlying legal decisions." *Silverstreak*, 159 Wn.2d at 892.

The superior court ruled that DSHS's actions were not substantially justified because the BOA decision was arbitrary and capricious. "An agency action that is arbitrary and capricious is not substantially justified. On the other end of the spectrum, RCW 4.84.350(1) contemplates that an agency action may be substantially justified, even when the agency's action is ultimately determined to be unfounded." *Raven*, 177 Wn.2d at 832 (internal citation omitted). Because we conclude that the decision was arbitrary and capricious, we also conclude that DSHS was not substantially justified and that the superior court did not abuse its discretion by awarding Karanjah attorney fees.

VI.     ATTORNEY FEES ON APPEAL

Karanjah requests attorney fees on appeal pursuant to RCW 4.84.350. She argues that she is entitled to attorney fees for responding to this appeal under EAJA because she is a qualified party, she should prevail on appeal, and DSHS was not substantially justified in its actions. We agree.

RAP 18.1(a) provides that if "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses." The party must devote a section of the brief to its request for attorney fees and costs. RAP 18.1(b). The request must include argument and citation to authority to advise the court of the appropriate grounds for an award of attorney fees and costs. *Osborne v. Seymour*, 164 Wn. App. 820, 866, 265 P.3d 917 (2011). "This requirement also demands more than a bald request for attorney fees on appeal." *Osbourne*, 164 Wn. App. at 866.

21

Karanjah requests attorney fees under RCW 4.84.350, discussed in the previous section. She appropriately dedicated a portion of her brief to the issue.

The analysis of the attorney fees section above applies here as well. Karanjah is the prevailing party, DSHS was not substantially justified, and we award Karanjah attorney fees on appeal.

We reverse the BOA's order and affirm the superior court's order. We also affirm the superior court's award of Karanjah's attorney fees and award her attorney fees on appeal.

Melnick, J.

We concur:

Maxa, A.C.J.

Lee, J.

22