IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| JANET GOVEA, | No. 85491-7-I |
| Appellant, | |
| v. | |
| DSHS - DIVISION OF CHILD SUPPORT, | UNPUBLISHED OPINION |
| Respondent. | |

BOWMAN, J. — Janet Govea appeals a final order of the Department of Social and Health Services Division of Child Support (Department) setting child support for her minor child, arguing the administrative law judge (ALJ) misapplied RCW 26.19.071(6)(a) in determining the amount of the father's imputed income, erred in calculating her actual income, and erred in applying a residential credit. Because the Department's order contravenes the statutory priorities under RCW 26.19.071(6)(a)(i) to (vi), we reverse and remand for recalculation of the father's imputed income, the parents' combined income, and each parent's proportionate share of the combined income. We otherwise affirm.

FACTS

Govea and Miguel Wooten are the parents of J.W. J.W. was born in 2014, has special medical needs, and resides mostly with Govea. In 2018, the Department entered an agreed order that set Wooten's monthly child support obligation at $254 based on his monthly income of $1,993. The order reflected

the parties' agreement to be jointly responsible for health care and other costs based on each party's proportionate share of the combined income, which was 43.8 percent for Wooten and 56.2 percent for Govea. According to a 2021 modified parenting plan, Wooten has residential time with J.W. every weekend and takes her to hippotherapy, or therapeutic horseback riding, once a week.

In May 2022, Govea petitioned to modify child support.[1] Govea sought to increase Wooten's monthly child support to $474 for the increased costs of J.W.'s medical needs and living expenses. Govea pointed out that Wooten did not work full-time hours but had the ability to do so. On May 31, 2022, an ALJ held an evidentiary hearing on Govea's petition. The ALJ heard the testimony of both parents and a Department representative and considered 19 exhibits submitted by the parties.

On June 21, 2022, the ALJ entered a final order with findings of fact and conclusions of law, increasing Wooten's monthly support obligation to $364.00. The ALJ found that Wooten works as a shuttle bus driver three days a week, which are all the hours available through his current employment, and that he earns $17.00 an hour. The ALJ also determined that Wooten's obligations under the parenting plan do not preclude full-time work, that he is "able-bodied," and that there is "no reason why he cannot obtain another part-time job or a full-time job at 40 hours per week." Based on these findings, the ALJ concluded that Wooten was voluntarily underemployed. The ALJ then imputed monthly income

---

[1] *See* RCW 74.20A.059 (grounds for modification of administrative child support orders); WAC 388-14A-3925 (process for petition to modify administrative support orders).

to Wooten of $2,511.60 based on the 2022 Washington minimum wage of $14.49 an hour and a 40-hour work week.  After deductions, his net monthly income was $2,164.69.  The ALJ also calculated net monthly income to Govea of $3,255.79 based on her full-time employment as a bilingual paraeducator with a school district.

Based on the parties' combined monthly net income of $5,420.48, the ALJ determined that the total support obligation was $999.00, and Wooten's 39.9 percent share of that obligation was $398.60 a month.[2]  Then, as "residential credit" for the time J.W. spends with Wooten, the ALJ deviated $35.00 from the standard calculation, which reduced Wooten's monthly support obligation to $364.00.[3]

Govea sought reconsideration, and after the ALJ denied her motion, she petitioned for review in superior court.  On Govea's unopposed motion, the superior court certified the case for direct review in this court.[4]

ANALYSIS

Govea contends that the ALJ misapplied RCW 26.19.071(6)(a) in determining the amount of Wooten's imputed income, erred in calculating her actual income, and erred in applying a residential credit to reduce Wooten's

---

[2] *See* RCW 26.19.020 (child support economic table).

[3] *See* RCW 26.19.075(1)(d) (allowing deviation from standard calculation if child spends a significant amount of time with the parent obligated to pay support).

[4] *See* RCW 34.05.518 (final decision of administrative agency in an adjudicative proceeding is directly reviewable by the court of appeals after superior court certification).

monthly child support payment.[5]  We address each argument in turn.

We review an ALJ's final order in a proceeding to set child support under the judicial review provisions of the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW.  RCW 74.20A.055(1); WAC 388-14A-6120(6).  On review, this court applies the standards of the WAPA directly to the record before the agency.  *Tapper v. Emp. Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).  We apply de novo review to questions of law and an agency's application of the law.  *Cornelius v. Dep't of Ecology*, 182 Wn.2d 574, 585, 344 P.3d 199 (2015).

Among other things, we will grant relief from an agency decision if the ALJ erroneously interpreted or applied the law, if substantial evidence in the record does not support the decision, or if the decision is arbitrary and capricious.  RCW 34.05.570(3)(d), (e), (i).  Evidence is substantial when it is sufficient to persuade a fair-minded person of the truth of the premise asserted.  *Cornelius*, 182 Wn.2d at 607.  We defer to the agency's interpretation of the law when the statute is within the agency's area of expertise.  *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 549, 389 P.3d 731 (2017) (quoting *Cornelius*, 182 Wn.2d at 585).  But "[d]eference 'is inappropriate when the agency interpretation conflicts with the statute.' "  *Id.* (quoting *Brown v. Dep't of Soc. & Health Servs.*, 145 Wn. App. 177, 183, 185 P.3d 1210 (2008)).

---

[5]  The Department filed briefing in response to Govea's appeal but "takes no position on the merits."  Wooten did not file a responsive brief.

RCW 74.20A.055(1) allows the Department to seek child support when there is no court order setting support or relieving a parent from having to pay.[6] The uniform "child support schedule" applies in all judicial or administrative proceedings that determine or modify child support. RCW 26.19.035(1)(b), (c); *In re Marriage of Brockopp*, 78 Wn. App. 441, 445, 898 P.2d 849 (1995). RCW 26.19.011(2) defines the "child support schedule" as "the standards, economic table, worksheets, and instructions" of chapter 26.19 RCW. The legislature adopted the uniform child support schedule as a means to equitably apportion child support between the parents, ensure that support is adequate to meet a child's basic needs, and provide additional support commensurate with the parents' income, resources, and standard of living. RCW 26.19.001.

When setting child support, the Department or the court must base the basic child support obligation on the statutory economic table. *In re Marriage of McCausland*, 159 Wn.2d 607, 611, 152 P.3d 1013 (2007); RCW 26.19.011(1), .020. The economic table is presumptive for combined monthly net incomes of up to $12,000. RCW 26.19.065(3). The Department or the court then allocates the child support obligation between the parents based on each parent's share of their combined monthly net incomes. RCW 26.19.080(1). RCW 26.19.075(1) authorizes deviation from the standard calculation based on certain factors, including the residential schedule. *See* RCW 26.19.075(1)(d).

---

[6] It appears that Govea filed an application with the Department in 2014 for assistance to secure child support for J.W. *See* WAC 388-14A-2010(1) (providing process to seek assistance from the Department to collect child support when applicant does not receive public assistance).

I. <u>Wooten's Imputed Income</u>

Govea challenges the amount of Wooten's imputed income. She contends that the ALJ failed to adhere to RCW 26.19.071(6)(a)(i) by not imputing income to Wooten based on his current rate of pay under the statute's first priority. We agree.

When a court or the Department is required to impute income, it establishes a rate of pay based on records that are statutorily prioritized under RCW 26.19.071(6)(a) in the following order:

>  (i)  Full-time earnings at the current rate of pay;
>  (ii)  Full-time earnings at the historical rate of pay based on reliable information, such as employment security department data;
>  (iii)  Full-time earnings at a past rate of pay where information is incomplete or sporadic;
>  (iv)  Earnings of [32] hours per week at minimum wage in the jurisdiction where the parent resides if the parent is on or recently coming off temporary assistance for needy families or recently coming off aged, blind, or disabled assistance benefits, pregnant women assistance benefits, essential needs and housing support, supplemental security income, or disability, has recently been released from incarceration, or is a recent high school graduate. Imputation of earnings at [32] hours per week under this subsection is a rebuttable presumption;
>  (v)  Full-time earnings at minimum wage in the jurisdiction where the parent resides if the parent has a recent history of minimum wage earnings, has never been employed and has no earnings history, or has no significant earnings history;
>  (vi)  Median net monthly income of year-round full-time workers as derived from the United States bureau of census, current population reports, or such replacement report as published by the bureau of census.

To determine Wooten's income and presumptive share of the child support obligation, the ALJ imputed income to him after determining that he was voluntarily underemployed. *See* RCW 26.19.071(6) (income must be imputed to a parent who is voluntarily unemployed or underemployed). There was no

dispute that Wooten worked part-time, and there was evidence to establish his current rate of pay at $17.00 an hour. But the ALJ did not use Wooten's current rate of pay to impute his income under RCW 26.19.071(6)(a)(i). Instead, it imputed full-time earnings at a lower rate of pay under the statute's fifth priority— the minimum wage of $14.49 an hour. *See* RCW 26.19.071(6)(a)(v). The ALJ explained that the minimum wage applied because there was no evidence that Wooten "previously worked full-time at his current wage of $17.00 per hour" or that he could find employment offering 40 hours per week at his current hourly rate.

But if there is a current rate of pay, RCW 26.19.071(6)(a)(i) requires the use of that rate to calculate full-time earnings, no matter if the parent has historically worked full-time at the current rate of pay.[7] And nothing in the statute requires evidence that full-time employment at the current rate of pay is available. Here, although Wooten testified that is it is "hard to find" employment that "pays well" and offers a schedule that can accommodate his parenting responsibilities, there was no evidence that Wooten would be unable to secure full-time employment or a second part-time position at his current rate of pay. Wooten testified that he had recently applied for positions with the Transportation

---

[7] Where there is a current rate of pay, the statute contemplates rejecting that rate and proceeding to the second or third priority and imputing income based on historical or past earnings if there is a disparity between historical and current earnings that supports a finding that the parent has purposefully reduced their income to limit the child support obligation. *See* RCW 26.19.071(6). These circumstances are clearly not present here. First, there was no evidence that Wooten purposefully worked part-time to limit his child support obligation. Further, the ALJ found his current rate of pay was higher than his historical pay rate.

Security Administration and the Port of Seattle, but he did not say whether those positions were full-time or part-time or mention the advertised pay rate.

Further, to impute full-time earnings at minimum wage under RCW 26.19.071(6)(a)(v), the statute requires that the parent "has a recent history of minimum wage earnings," has never been employed, or has no "significant" earnings history. That is not the case here. Wooten testified that he had worked for his current employer for about five years. And while there was no testimony specific to his historical rate of pay, other testimony and the "Employment Security Data" (ESD) report submitted as evidence showed that Wooten had a significant earnings history and suggested that since 2018, his average pay rate was above minimum wage.

Because Wooten was employed and the evidence established a current rate of pay, RCW 26.19.071(6)(a)(i) required the ALJ to use Wooten's current pay rate to impute his income. We reverse and remand for the ALJ to recalculate Wooten's imputed full-time earnings based on an hourly rate of pay of $17 and to recalculate the parites' combined income and their proportional share of that income.

Govea also contends that the evidence does not support the ALJ's finding that Wooten's current rate of pay is $17.00 an hour. Relying on the ESD report, Govea points out that based on 304 reported hours for the fourth quarter of 2021, Wooten earned $5,615.75, which equates to an hourly rate of $18.47. So, the ALJ should have calculated Wooten's full-time income based on an hourly rate of $18.47. But Wooten's testimony supports the ALJ's finding that his current pay

8

rate is $17.00 an hour. And while the ESD report provides his total quarterly earnings, it does not specify whether the same base rate of pay applied to some, or all, of the hours Wooten worked. Substantial evidence in the record supports the ALJ's finding that Wooten's current pay rate is $17.00 an hour.

II. Govea's Actual Income

Govea next contends that the ALJ miscalculated her income by using a formula based on the number of weeks, rather than days, she worked and by including nonrecurring overtime income. We disagree.

RCW 26.19.071(1) requires the court to consider all income and resources from each parent when determining child support. Overtime income is presumptively included in setting child support unless there is a finding that it is a nonrecurring source of income based on a review of income over the past two calendar years. RCW 26.19.075(1)(b); *In re Marriage of Newell*, 117 Wn. App. 711, 719 n.18, 72 P.3d 1130 (2003).

The ALJ used two different methods to calculate Govea's gross monthly income as a paraeducator. For the first method, the ALJ multiplied Govea's hourly pay rate of $28.36 by 40 hours per week to arrive at weekly earnings of $1,134.40. The ALJ then multiplied that figure by 43 to account for a 10-month school schedule (4.33 weeks per month times 10) for a total annual income of $48,779.20. The ALJ then divided that figure by 12 to yield Govea's monthly gross income as $4,064.93. For the second method, the ALJ used the ESD report to add the total income Govea earned in the four most recent quarters (the second, third, and fourth quarters of 2021 plus the first quarter of 2022) to

9

determine her annual gross income of $48,492.09 ($10,081.26 plus $15,622.20 plus $11,278.53 plus $11,510.10). The ALJ then divided that figure by 12 to determine Govea's average monthly gross income of $4,041.01. The ALJ gave Govea the benefit of the lower $4,041.01 figure to calculate the parties' combined income.

Govea identified a lower monthly income figure of $3,630.08 in the documents she filed to support her motion to modify support, but she provided no explanation or evidence to support her calculation. Still, Govea claims that the ALJ should have calculated her monthly income by determining her daily income and multiplying that amount by 192, the number of days she works in a school year. But she did not present a specific method of calculating her income or provide accurate information about the number of days she worked.[8] And the ALJ ultimately used the lower figure that relied on the ESD report, not the figure based on her weekly income and number of weeks worked. In any event, the evidence supports both calculations. The testimony and evidence support the figures the ALJ used for Govea's hourly pay rate, weekly hours worked, and the approximate length of the school year. Govea fails to establish error.

Nor did the ALJ err by including overtime pay in calculating Govea's income. Govea testified that she works overtime when it is available. Specifically, she earned overtime pay teaching summer school in 2021 and planned to do so again in 2022. Govea's paystubs and her quarterly earnings

---

[8] In her testimony, Govea mentioned a school year of 102 days, but she did not explain how she calculated that figure or how it is consistent with her testimony that she works a 9- to 10-month schedule.

show that she regularly earned varying amounts of overtime income. Contrary to Govea's argument, there was no basis for a finding that her overtime income was nonrecurring to overcome the presumption of inclusion.

III. Residential Credit

Finally, Govea challenges the ALJ's decision to apply a residential credit reducing Wooten's support obligation by $35 a month. Govea claims that the circumstances do not warrant a credit because none of the prior child support orders[9] deviated from the standard calculation and J.W. resides with her most of the time. The ALJ did not abuse her discretion.

The ALJ deviated from the presumptive amount of child support under RCW 26.19.075(1)(d), which provides:

> The court may deviate from the standard calculation *if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment.* The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving temporary assistance for needy families. When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.[10]

It is an abuse of discretion to deviate from the standard calculation without providing adequate reasons supported by the record. *In re Marriage of Glass*, 67

---

[9] The only child support order in the record predating the 2021 parenting plan is the 2018 agreed order. The record does not indicate what residential provisions were in place at the time of the 2018 order.

[10] Emphasis added.

Wn. App. 378, 384, 835 P.2d 1054 (1992).

Under the 2021 parenting plan, J.W. spends Friday evenings, Saturdays, and Sundays with Wooten (2 overnights every other weekend and 1 overnight on alternating weekends). Govea does not challenge the ALJ's determination that J.W. spends 78 nights a year with Wooten. Along with weekend and holiday residential time, Wooten picks up J.W. from school at 2:00 p.m. every Tuesday for hippotherapy and brings her home between 4:30 p.m. and 5:30 p.m. The court found that the parties have followed this schedule "consistent[ly]." Wooten also testified that he incurs additional expenses related to J.W.'s special needs during his residential time. The court concluded that the amount of Wooten's residential time was enough to support a modest deviation because he must provide meals and housing for J.W. during visitation.

The record supports the ALJ's determination that J.W. spends significant residential time with Wooten. Even assuming there was no deviation in any prior child support order, the ALJ's decision to apply a modest deviation in light of the consistent schedule under the 2021 parenting plan was not an abuse of discretion, and the Department's order is not arbitrary and capricious as a result of the deviation.

We reverse the final order modifying child support and remand for the ALJ to recalculate the amount of income imputed to Wooten and the corresponding combined income and the parties' proportional share of the income.

Brennan, J

WE CONCUR:

Feldman, J.          Chung, J.