## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LYNN EPLEY,<br><br>Appellant,<br><br>v.<br><br>STATE OF WASHINGTON, BOARD OF APPEALS, DEPARTMENT OF SOCIAL & HEALTH SERVICES,<br><br>Respondent. | No. 54385-1-II<br><br><br>UNPUBLISHED OPINION |

VELJACIC, J. — Lynn Epley[1] appeals the review decision and final order of the Board of Appeals (BOA) which affirmed the Department of Social and Health Services' (DSHS) finding that she committed physical abuse against a vulnerable adult, S.[2] Lynn argues that substantial evidence does not support the BOA's finding that she acted to punish S. or continued to escalate the incident giving rise to the allegation of physical abuse. Lynn also argues that the BOA committed errors of law in its final order by erroneously: concluding that she willfully acted to punish S.; concluding that she physically mistreated S.; interpreting RCW 74.34.020(2)(b)[3] to conclude that she committed physical abuse; and failing to apply certain case law, which she

---

[1] We use the first names of the involved parties for improved clarity. No disrespect is intended.

[2] We refer to the vulnerable adult's first initial in order to protect her identity. *Karanjah v. Dep't of Soc. & Health Servs.*, 199 Wn. App. 903, 907 n.2, 401 P.3d 381 (2017).

[3] RCW 74.34.020 was amended by the legislature, which became effective on January 1, 2022. LAWS OF 2020, ch. 312, § 735. The amendments do not affect the portion of the statute at issue in this case.

contends is analogous to the facts of her case. Lynn further argues that the BOA's final order is arbitrary and capricious. Finally, Lynn argues that she is entitled to an award of attorney fees.

We hold that substantial evidence supports the BOA's finding that Lynn acted to punish S. and that she continued to escalate the situation that gave rise to the allegation of physical abuse. We also hold that the BOA did not err by: concluding that Lynn willfully acted to punish S.; concluding that she physically mistreated S.; concluding that Lynn committed "physical abuse" within the meaning of RCW 74.34.020(2)(b); and declining to apply certain case law because the cases are not analogous to the facts of this case. We also hold that the BOA's final order is not arbitrary and capricious. Furthermore, we deny Lynn's request for attorney fees. Accordingly, we affirm the BOA's final order.

FACTS

I.      FACTUAL BACKGROUND & THE INCIDENT[4]

A.      Factual Background

S. was 63 years old at the time of the alleged physical abuse. S. suffers from Lewy Body Disease, which is a progressive form of dementia. She also suffers from a variety of other ailments, such as: hyperthyroid disorder, fibromyalgia, adrenal insufficiency, cervical degeneration, and chronic neck pain. Additionally, S. is bi-polar, has an anxiety and personality disorder, and she has a history of impulse control and substance abuse issues.

S. has no capacity to make decisions about medications and generally has poor judgment. In September 2016, when the incident occurred, she especially needed assistance in regulating and managing her medications.

---

[4] The facts are mainly drawn from the unchallenged BOA's findings, which are verities on appeal. *Brown v. Dep't of Soc. and Health Servs.*, 145 Wn. App. 177, 180, 185 P.3d 1210 (2008).

In the fall of 2015, S. lived with her father in an apartment on Vashon Island. In December 2015, after her father died, S. moved in with her son, Anthony Epley, and his wife at the time, Lynn.

During the period at issue, S. received 60 hours of in-home care per month. Lynn was S.'s contracted "individual provider." Clerk's Papers (CP) at 269 (emphasis omitted).

Although S. was initially enthusiastic about moving in with her son, the change in residences proved difficult for her. S. wanted to be independent and had a hard time adjusting to the household's schedule. S. wanted to eat, get up, and go to bed when she wanted. S. was frustrated that she had to accommodate the household's schedule and that she had to rely on Lynn for her medication management and care. By September 2016, S. wanted to move to an assisted living facility or an adult family home.

Lynn had a rule that required S. to leave the common areas of the house and go to her own room, if requested by Anthony or Lynn. The rule was created based on S.'s arguments about medications, the cleanliness of the house, and other matters.

Some of S.'s family members were estranged from Anthony and S., which had been a source of difficult conversations between the two. S. would initiate arguments with Anthony about the estranged family. She knew her son's triggers and tried to get him riled up. Until July 2016, Anthony was able to diffuse S.'s arguments.

On June 21, 2016, Anthony was involved in a motorcycle accident. He sustained a head injury, which Lynn did not learn of until after they had separated. However, Lynn noticed a drastic change in Anthony's behavior. For example, he often became agitated, could not remember things, and his relationship with S. became more volatile. Specifically, S.'s comments and complaints

began to affect Anthony differently. Anthony would argue with S. rather than deescalate the situation like he did before.

B.     The Incident

On September 22, 2016, DSHS Adult Protective Services (APS) received a referral[5] which alleged that on September 21, 2016, Lynn physically abused S., a vulnerable adult. The referral was assigned to an investigator for DSHS.

The investigator interviewed Lynn about the alleged physical abuse. Lynn stated that on the morning of September 21, 2016, she and Anthony were having coffee in their living room. S. also came into the room with a cup of coffee and then "started in on [Anthony]." CP at 273 (emphasis omitted). Lynn told S. that she needed to go to her room, but S. refused. Lynn told S., "You are going to leave." CP at 274 (emphasis omitted). Lynn then told the investigator that "[she] grabbed [S.] and pulled her. [S.] was sitting on the couch. She arched her back and fought every step of the way. Because she was fighting she fell of the couch." CP at 274 (emphasis omitted). Referring to her own conduct, Lynn admitted that "[she] was shocked [she] did it. [She] snapped. [She] couldn't take it anymore." CP at 274 (emphasis omitted). Lynn said that S. would not stop and would not leave the room, so she grabbed S. by her waist and continued to try to get her to leave the room.

In spite of her admission that she "snapped" and "couldn't take it anymore," CP at 274 (emphasis omitted), Lynn claimed that she did not act in anger toward S. nor that she intended to hurt her. Instead, Lynn claimed that she was attempting to protect Anthony and S. from a "dangerous, escalating situation." CP at 275.

---

[5] The identity of the reporting party is confidential and may not be disclosed. RCW 74.34.040.

The investigator interviewed S. about the alleged physical abuse. S. stated that Lynn asked to go to her room, per the house rule. When S. told Lynn that she was not a child and should not have to be told to go to her room, S. stated that Lynn "went into a rage" and threw her to the ground. CP at 272 (emphasis omitted). S. said that when she still refused to go to her room, Lynn tried to grab her from behind, but Anthony took S. to her room. S. stated that she was angry and yelled at Lynn during the incident. S. was not injured as a result of the incident.

The investigator also interviewed Anthony, who recounted his version of the events. Anthony stated that S. was sitting on the couch when Lynn screamed at her to go to her bedroom. S. started yelling and screaming back at Lynn, telling Lynn to leave her alone. Anthony tried to intervene, but Lynn grabbed ahold of S.'s right arm. S. was holding a cup of coffee, but it spilled on the floor due to Lynn's grabbing. Lynn continued to pull S. until she fell off the couch and onto the floor. Anthony helped S. off of the floor and tried to block Lynn's advances towards S. Lynn then began to push S. toward the hallway. S. grabbed onto the side of the hallway entrance. Anthony then put his arms around S.'s midsection to prevent her from falling.

## II.    PROCEDURAL HISTORY

The investigator recommended that the allegation of physical abuse was substantiated. On January 17, 2017, DSHS determined that Lynn's actions on September 21, 2016, constituted "physical abuse" of S., a vulnerable adult, within the meaning of RCW 74.34.020(2)(b). CP 388. Lynn timely requested an administrative hearing to contest the decision.

An administrative law judge (ALJ) held a hearing on the initial finding of physical abuse. The ALJ issued findings of fact and conclusions of law and an initial order reversing DSHS's finding of physical abuse. The ALJ reasoned that "[e]vidence of a willful action that results in

injury is necessary to prove physical abuse under RCW 74.34.020(2)(b). . . . [B]ecause [S.] was not injured as a result of [Lynn's] actions, there was no physical abuse." CP at 311.

DSHS appealed to the Board of Appeals (BOA). The BOA concluded that DSHS had proved physical abuse and reversed the ALJ. The BOA entered the relevant findings of fact:

> 26. . . . . In resolving the conflicting evidence, it is found more likely than not that [Lynn] became angry with [S.] and wanted to punish her and make her leave the room. [Lynn] then grabbed [S.] and pulled her until she fell onto the floor. At this point, instead of de-escalating the incident and helping [S.] back to the couch and checking her for an injury, [Lynn] continued to escalate the situation by struggling with [S.] and ultimately pushing her into the hallway.
> . . . .
> 27. . . . . [Lynn] asked [S.], who was sitting on the couch, to leave and return to her own room. When [S.] refused, [Lynn] attempted to discipline [S.] and force her to acquiesce to [her] demands.

CP at 276-77. The BOA also entered the relevant conclusions of law:

> 8. . . . . [Lynn] knew that [S.] had a progressive form of dementia and generally exhibited poor judgement. [Lynn] also reasonably knew that by pulling [S.] off the couch and forcing her out of the living room she could punish and upset [S]. [S.]'s comments to [the investigator] further demonstrated that [Lynn's] actions were meant to ridicule and punish [S]. Specifically, [S.] reported that [Lynn] was treating her like a child, "*went into* a *rage*," and threw [S.] to the ground. It is therefore concluded that [Lynn] "*willfully*" attempted to ridicule and punish [S.] when she took these actions. Pursuant to RCW 74.34.020(2), and WAC 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, [Lynn's] physical mistreatment of S. in an effort to punish her constituted the "*willful*" or "*non-accidental action*" required to commit physical abuse.
> . . . .
> 10. . . . . Although [Lynn's] unnecessary actions arguably did not inflict bodily injury, they clearly constituted ***physical mistreatment*** as the actions were not meant to protect S., the caregiver, or other vulnerable individuals, but were the result of [Lynn's] own frustration, anger, and desire to punish [S]. Therefore, it must be concluded that [Lynn] committed "*physical abuse*" of a vulnerable adult when she physically grabbed S. and pulled her off a couch to the floor.
> 11. . . . . In order to prove physical abuse, the Department must only prove that [Lynn] ***physically mistreated*** a vulnerable adult, not that actual physical harm occurred. In this matter, [Lynn] physically mistreated [S.] when she physically grabbed her and pulled her off a couch to the floor, in an effort to punish her. Therefore, it must be concluded that [Lynn's] actions toward [S.] constituted physical abuse of a vulnerable adult pursuant to RCW 74.34.020(2).
> 12. . . . . Initial Conclusions of Law 5.1 through 5.11, and 5.13, and 5.14, cited and applied the governing law correctly and they are adopted and incorporated

as conclusions for this decision. Initial Conclusions of Law 5.12, and 5.15 through 5.17, included errors of law or were based on prior erroneous Conclusions of Law and are not adopted and incorporated as conclusions for this decision.

CP at 280-82.

Lynn filed a petition for judicial review of the BOA order with the superior court. The superior court denied Lynn's petition for judicial review and affirmed the BOA's final order, which sustained the finding of physical abuse against S. Lynn appeals.

## ANALYSIS

I.    STANDARD OF REVIEW

This appeal is a petition for judicial review of a final agency order, which is reviewed under RCW 34.05.570(3). RCW 34.05.570(3) states in relevant part:

The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:
. . . .
(d) The agency has erroneously interpreted or applied the law;
(e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;
. . . .
(i) The order is arbitrary or capricious.

"The burden of demonstrating the invalidity of agency action is on the party asserting invalidity." RCW 34.05.570(1)(a). Additionally, relief is available only if the petitioner shows that they were substantially prejudiced by the action complained of. RCW 34.05.570(1)(d).

"When reviewing an agency decision, we apply the standards of chapter 34.05 RCW directly to the agency's record without regard to the superior court decision." *Goldsmith v. Dep't of Soc. & Health Servs.*, 169 Wn. App. 573, 584, 280 P.3d 1173 (2012). Our factual review is confined to the record before the ALJ and BOA. RCW 34.05.558; *Karanjah v. Dep't of Soc. & Health Servs.*, 199 Wn. App. 903, 914, 401 P.3d 381 (2017).

When reviewing an administrative agency decision, we review issues of law de novo. *Karanjah*, 199 Wn. App. at 914. "Additionally, although we review legal issues de novo, we give 'substantial weight to the agency's interpretation of the law it administers, particularly where the issue falls within the agency's expertise.'" *Id*. (quoting *Goldsmith*, 169 Wn. App. at 584).

II.      SUBSTANTIAL EVIDENCE[6]

Lynn argues that substantial evidence does not support the BOA's findings of fact 26 and 27. We disagree.

A.      Standard of Review

We review factual findings for substantial evidence. *Karanjah*, 199 Wn. App. at 916. "Substantial evidence supports a finding when the evidence in the record is sufficient to persuade a rational, fair-minded person that the finding is true." *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012). "We view the evidence 'in the light most favorable to . . . the party who prevailed in the highest forum that exercised fact-finding authority.'" *Spokane County v. E. Wash. Growth Mgmt. Hr'gs Bd.*, 176 Wn. App. 555, 565, 309 P.3d 673 (2013) (internal quotation marks omitted) (quoting *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001)). We do not weigh witness credibility or substitute our judgment for the agency's findings of fact. *Brown v. Dep't of Soc. & Health Servs.*, 145 Wn. App. 177, 182, 185 P.3d 1210 (2008)

---

[6] Lynn also challenges the BOA's conclusions of law 8 and 10-12, arguing that the findings do not support those conclusions and because they are contrary to the holdings of *Brown* and *Karanjah*. Because Lynn challenges the BOA's conclusions of law, those arguments are better addressed under the error of law standard of RCW 34.05.570(3)(d), which is discussed below.

The APA provides that a reviewing officer generally exercises "all the decision-making power that the reviewing officer would have had to decide and enter the final order had the reviewing officer presided over the hearing." RCW 34.05.464(4). "Where the ALJ and the review officer enter contradictory findings, we do not accord the deference to the ALJ . . . because the review officer has broad decision-making authority and is intended to bring the agency's expertise to bear." *Crosswhite v. Dep't of Soc. & Health Servs.*, 197 Wn. App. 539, 548, 389 P.3d 731 (2017). However, this is subject to the proviso that "[i]n reviewing findings of fact by presiding officers, the reviewing officers shall give due regard to the presiding officer's opportunity to observe the witnesses." RCW 34.05.464(4).

B.      Finding of Fact 26

Lynn argues that substantial evidence does not support finding of fact 26 because no evidence supports that she acted to punish S. We disagree.

In relevant part, finding of fact 26 provides that, "it is found more likely than not that [Lynn] became angry with [S.] and wanted to punish her and make her leave the room." CP at 276.

In this case, it is unchallenged that Lynn had a rule which required S. to leave the common areas of the house and go to her own room upon request. On the day of the incident, testimony established that Lynn told S. that she needed to go to her room. But when S. refused to leave, S. told the investigator that Lynn "went into a rage." CP at 83. Even Lynn testified that "[she] had snapped. [She] had lost all control of the situation." CP at 224. Further testimony established

that Lynn told S., "You're going to leave" and that "[she] grabbed her and pulled her. She was sitting on the couch. She arched her back and fought every step of the way. Because she was fighting, she fell off the couch." CP at 119. When S. continued to refuse, Lynn told the investigator that "[she] grabbed [S.] by her waist and continued to try to get her to leave the room." CP at 119.

Based on the above and viewing the evidence in the light most favorable to DSHS, a rational, fair-minded person could be persuaded that Lynn acted to punish S. for her refusal to abide by the household rule, especially in light of Lynn's admitted anger and loss of control. *See Cantu*, 168 Wn. App. at 21. Accordingly, we conclude that substantial evidence supports the BOA's finding that Lynn acted to punish S.[7]

Lynn also contends that substantial evidence does not support finding of fact 26 because record demonstrates that she intended to separate S. and Anthony and, in fact, attempted to deescalate the situation. We disagree.

---

[7] On this point, Lynn also argues that the BOA's final order contradicts itself on the finding of punishment. The BOA's final order stated that the ALJ's "Initial Conclusions of Law . . . 5.13 . . . . cited and applied the governing law correctly and they are adopted and incorporated as conclusions for this decision." CP at 282. In the initial order, the ALJ stated that, "A person acts willfully if she intended to harm the vulnerable adult or if she subjectively knew or reasonably should have known that her actions could cause injury, unreasonable confinement, intimidation, or punishment," citing *Crosswhite*. CP at 310. But at footnote 4 of the initial order, the ALJ stated that "there is no allegation or evidence to suggest [Lynn's] actions resulted in unreasonable confinement, intimidation or punishment." CP at 310. As discussed above, the BOA disagreed and found that Lynn acted to punish S.

It is clear from the BOA's final order that it meant that the ALJ correctly stated the definition of "willfulness," not that it was incorporating the ALJ's finding that there was no evidence of punishment. Thus, when considering the totality of the BOA's final order, the contradiction appears inadvertent. Additionally, the BOA is permitted to depart from the ALJ's findings as long as it "give[s] due regard to the presiding officer's opportunity to observe the witnesses." RCW 34.05.464(4). That was done here. And, as explained above, the BOA's finding that Lynn acted to punish S. is supported by substantial evidence in the record.

Lynn challenges the portion of finding of fact 26 which provides that, "instead of de-escalating the incident and helping [S.] back to the couch and checking her for an injury, [Lynn] continued to escalate the situation by struggling with [S.] and ultimately pushing her into the hallway." CP at 276.

Lynn testified that "[she] and [Anthony] were having coffee, [S.] sat down on the couch, and she began to get into it with [Anthony]." CP at 235. Testimony established that the argument between S. and Anthony was escalating, but remained strictly verbal. S. was "was sitting on the couch when [Lynn] asked her to leave." CP at 235-36. Lynn testified that she "asked [S.] several times. And as [the situation] escalated [Lynn said], 'Okay, you've got to go.'" CP at 236. As discussed above, Lynn then grabbed S. and pulled her off the couch. And when S. continued to refuse, testimony established that Lynn "grabbed [S.] by her waist and continued to try to get her to leave the room." CP at 119.

Based on the above, a rational, fair-minded person could be persuaded that Lynn continued to escalate the situation because she turned a verbal altercation into a physical one. *See Cantu*, 168 Wn. App. at 21. Accordingly, we conclude that substantial evidence supports finding of fact 26.

C.      Finding of Fact 27

Lynn argues that substantial evidence does not support finding of fact 27 because "[i]t is clear from the testimony at [the administrative hearing] that [Lynn's] actions were not intended to punish [S.], but rather to separate [S.] and [Anthony] from each other so that the confrontation between [S.] and [Anthony] would end." Br. of Appellant at 37. We disagree.

Lynn challenges the portion of finding of fact 27 which provides that, "[Lynn] asked S., who was sitting on the couch, to leave and return to her own room. When S. refused, [Lynn] attempted to discipline S. and force her to acquiesce to [her] demands." CP at 277.

But as discussed above, reviewing the evidence in the light most favorable to DSHS, a rational, fair-minded person could be persuaded that Lynn intended to punish, that is "discipline," S. because of her refusal to abide by the household rule especially in light of Lynn's admitted anger and loss of control during her response. *See Cantu*, 168 Wn. App. at 21. By attempting to physically remove S. from the room, a rational, fair-minded person could also be persuaded that Lynn attempted to force S. to acquiesce to her demands. *See Id.* Accordingly, we conclude that substantial evidence supports finding of fact 27.

III.   INTERPRETATION AND APPLICATION OF THE LAW

Lynn argues that the BOA erred in its interpretation and application of the law. We disagree.

A.     Standard of Review

As discussed above, we may grant a petitioner relief from an agency order if "[t]he [BOA] has erroneously interpreted or applied the law." RCW 34.05.570(3)(d). When reviewing an administrative agency decision, we review de novo an agency's conclusions of law and its application of the law to the facts. *Raven v. Dep't of Soc. & Health Servs.*, 177 Wn.2d 804, 817, 306 P.3d 920 (2013).

Statutory interpretation is a question of law that we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). The primary goal of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* at 762. To determine legislative intent, we first look to the plain language of the statute. *Id.* "If the statute's meaning is plain on its face,

12

we give effect to that plain meaning as the expression of what was intended." *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 281, 242 P.3d 810 (2010).

In addition, "'[s]tatutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous.'" *G-P Gypsum Corp. v. Dep't of Revenue*, 169 Wn.2d 304, 309, 237 P.3d 256 (2010) (internal quotation marks omitted) (quoting *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003)).

"We accord substantial weight to the [agency's] interpretation of a statute that it administers." *Olympic Stewardship Found. v. W. Wash. Growth Mgmt. Hr'gs Bd.*, 166 Wn. App. 172, 189, 274 P.3d 1040 (2012). However, "[d]eference to an agency interpretation 'is inappropriate when the agency interpretation conflicts with the statute.'" *Brown*, 145 Wn. App. at 183 (quoting *Dep't. of Labor & Indus. v. Granger*, 159 Wn.2d 752, 764, 153 P.3d 839 (2007)).

B.    Legal Principles

The Washington State Legislature enacted the Abuse of Vulnerable Adults Act (AVA)[8] to protect vulnerable adults from "abuse, neglect, financial exploitation, or abandonment by a family member, care provider, or other person who has a relationship with the vulnerable adult." RCW 74.34.005; *See also Karanjah*, 199 Wn. App. at 914.

Relevant here, "abuse" is defined as "the willful action or inaction that inflicts injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult."[9]    RCW 74.34.020(2). "Abuse" includes . . . "physical abuse," which is defined as "the willful action of

---

[8] Ch. 74.34 RCW.

[9] "Vulnerable adult" is defined as "a person: (a) Sixty years of age or older who has the functional, mental, or physical inability to care for himself or herself; or . . . (f) Receiving services from an individual provider." RCW 74.34.020(21). In this case, the parties do not dispute that S. is a "vulnerable adult" within the meaning of RCW 74.34.020(21).

inflicting bodily injury or physical mistreatment." RCW 74.34.020(2)(b). "Physical abuse *includes, but is not limited to*, striking with or without an object, slapping, pinching, choking, kicking, shoving, or prodding." RCW 74.34.020(2)(b) (emphasis added).

"Willful" is not defined in chapter 74.34 RCW. *See* RCW 74.34.020. At the time of Lynn's administrative hearing, no operative DSHS regulation defined "willful."[10] However, in *Crosswhite*, Division Three of this court interpreted the term "willful" to mean "an actor's knowing action or inaction and knowing 'inflict[ion of] injury, unreasonable confinement, intimidation or punishment.'" 197 Wn. App. at 551 (quoting RCW 74.34.020(2)).

---

[10] Effective January 26, 2018, DSHS repealed the portion of former WAC 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, which defined the statutory phrase "willful," based on the decision in *Crosswhite*, 197 Wn. App. 539. *See* WSR 18-02-044. The former regulation defined "willful" as "the nonaccidental action or inaction by an alleged perpetrator that he/she knew or reasonably should have known could cause harm, injury, or a negative outcome." Former WAC 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.

WAC 388-103-0001(16) is the current regulation that defines "willful," which became effective on July 1, 2021. The current regulation provides that "[a] person's action or inaction is willful when the person's action or inaction is intentional or knowing." WAC 388-103-0001(16). An action or inaction is intentional "when the person's objective or purpose is to inflict injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult." WAC 388-103-0001(16)(a). An action or inaction is knowing "when the person is aware that his or her action or inaction would inflict injury, unreasonable confinement, intimidation, or punishment on a vulnerable adult." WAC 388-103-0001(16)(b).

Accordingly, we will utilize the *Crosswhite* court's definition of "willful" because it was the only operative definition of that term at the time of Lynn's administrative hearing.

Accordingly, under the statutory scheme, DSHS must prove three elements to show abuse: (1) willful action or inaction, (2) that inflicts injury, unreasonable confinement, intimidation, or punishment, (3) on a vulnerable adult. *See* RCW 74.34.020(2). Under the applicable regulations, the DSHS must prove these elements by a preponderance of the evidence. WAC 388-103-0140(1)-(2).[11]

Furthermore, under *Brown* and its progeny, if the alleged perpetrator acted in a protective manner, not an injurious or ill-intended manner, then their actions are justified, and therefore, not considered "abuse" under RCW 74.34.020(2). 145 Wn. App. at 183; *Karanjah*, 199 Wn. App. at 923-24.

C.     The BOA Did Not Err by Concluding That Lynn Willfully Acted to Inflict Punishment on S.[12]

Lynn contends that, "since there is no substantial evidence to support Finding of Fact 26 or 27 . . . there are no facts to support the Conclusions of Law 8," in which the BOA concluded that Lynn "willfully" acted to punish S. when she took the actions at issue. Br. of Appellant at 40. We disagree.

---

[11] Under RCW 74.34.165, the legislature delegated the authority to "adopt rules relating to the reporting, investigation, and provision of protective services in in-home settings, consistent with the objectives of this chapter." Chapter 388-103 WAC is the section that applies to APS.

[12] As discussed above, neither the statute nor any regulation defined the term "willful." Lynn points this out in her opening brief. Lynn also points out that the BOA cited former WAC 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 in its final order. Lynn is correct. *See* CP 280. However, Lynn does not request reversal based on the BOA's error in applying the repealed definition of "willful." But even if she did, reversal would not be required because the BOA's legal reasoning tracks the *Crosswhite* court's interpretation of willfulness in former WAC 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. *See* CP 280 (relying on knowing infliction of punishment and nonaccidental nature of Lynn's actions to conclude that she acted willfully).

Rather than lacking substantial evidence, the record supports the Board's findings. Lynn ordered S. to return to her room, per the house rule. When S. refused, Lynn grabbed her arm, attempted to pull her off the couch, engaged in a brief physical struggle, and eventually made her go to her room. Her conduct alone demonstrated a forceful attempt to punish S. Her intent became clear when she said that "[She] snapped" and that "[She] couldn't take it anymore," CP at 274, which demonstrate a willfully punitive, rather than a protective intent. Clearly, Lynn knew that her actions were intended to inflict punishment on S., which equates to abuse. RCW 74.34.020(2); *Crosswhite*, 197 Wn. App. at 551.

Because substantial evidence supports finding of fact 26 and 27, which found that Lynn acted to punish S. for refusing to abide by her demands, we hold that the BOA did not err by concluding that Lynn willfully acted to inflict punishment on S. within the meaning of RCW 74.34.020(2). Accordingly, Lynn's argument fails.

D.      The BOA Did Not Err By Concluding That Lynn Physically Mistreated S.

Lynn also appears to argue that the BOA erred by concluding that she physically mistreated S. We disagree.

As discussed above, "physical abuse" is defined as "the willful action of inflicting bodily injury or physical mistreatment." RCW 74.34.020(2)(b). "Physical abuse *includes, but is not limited to*, striking with or without an object, slapping, pinching, choking, kicking, shoving, or prodding." RCW 74.34.020(2)(b) (emphasis added). "Washington courts have consistently interpreted the statutory language, 'including but not limited to' to indicate the legislative intent to create an illustrative, not exhaustive, list." *State v. Joseph*, 3 Wn. App. 2d 365, 372, 416 P.3d 738 (2018). "Where a general term . . . is modified by a nonexclusive list, the general term will be deemed to 'incorporate those things similar in nature or comparable to the specific terms.'" *Id*.

(internal quotation marks omitted) (quoting *State v. Larson*, 184 Wn.2d 843, 849, 365 P.3d 740 (2015)).

Here, Lynn does not challenge the portion of finding of fact no. 26, which stated that "she grabbed S. and pulled her" to the point where "[S.] fell off the couch." CP at 276. Because this is an unchallenged finding of fact, it is a verity on appeal. *Brown*, 145 Wn. App. at 180. The BOA concluded that Lynn physically mistreated S. when she physically grabbed her and pulled her off a couch to the floor, in an effort to punish her. Neither "grabbing" nor "pulling" are mentioned in RCW 74.34.020(2)(b). However, grabbing and pulling can constitute "physical mistreatment," and therefore "physical abuse," if done in an ill-intended manner because those acts are comparable to the specific acts listed in RCW 74.34.020(2)(b). *See Joseph*, 3 Wn. App. 2d at 372.

Because substantial evidence supports the BOA's finding that Lynn acted to punish S., which is an ill-intended act, and because Lynn physically grabbed and pulled S. to the point where she fell off the couch, BOA did not err by concluding that Lynn physically mistreated S.

E.      The BOA Did Not Err in its Interpretation of "Physical Abuse."

Lynn appears to argue that, in order to sustain a finding of physical abuse, the DSHS must produce evidence that the alleged abuser willfully acted to inflict injury. Because S. did not suffer injury as a result of the incident, Lynn contends that the BOA erred by concluding that she physically abused S. We disagree.

Here, the BOA interpreted "physical abuse" to mean that the DSHS only needed to prove that Lynn physically mistreated a vulnerable adult, not that actual physical harm occurred. As discussed above, RCW 74.34.020(2)(b) defines "physical abuse" to mean the "willful action of inflicting bodily injury *or* physical mistreatment." (Emphasis added.) Based on its plain language, the statute does not require the DSHS to prove that an alleged abuser intended to inflict actual

17

bodily injury. If it did, then the term "physical mistreatment" would be rendered superfluous. *G-P Gypsum Corp.*, 169 Wn.2d at 309.

Because the statute plainly states that physical abuse means the infliction of "bodily injury or physical mistreatment," and because the BOA's interpretation is consistent with RCW 74.34.020(2)(b), we defer to the BOA's interpretation of the statute. *See Brown*, 145 Wn. App. at 183.

Similar to the above argument, where she asserts that the statute requires actual bodily injury be shown, here Lynn appears to argue that *Brown*, *Karanjah*, and *Crosswhite* requires resulting bodily injury. Because Lynn's interpretation of those cases is misguided, we disagree.

Contrary to Lynn's contention, *Brown*, *Karanjah*, and *Crosswhite* generally held that, absent proof of intent, an alleged abuser's actions would not meet the definition of "abuse" under RCW 74.34.020(2). *Karanjah*, 199 Wn. App. at 921; *Crosswhite*, 197 Wn. App. at 557; *Brown*, 145 Wn. App. 182-83. Contrary to Lynn's assertion, these cases did not nullify the plain language of RCW 74.34.020(2) by requiring bodily injury as a necessary element to an abuse finding.

To reach her assertion, Lynn misinterprets language from *Karanjah*. In *Karanjah*, we stated that "[a] willful action that inflicts injury is necessary to prove abuse." 199 Wn. App. at 915. That statement cites to Division Three's opinion in *Crosswhite*, a mental abuse case. *See Id*. As discussed above, *Crosswhite* stands for the proposition that a finding of abuse is sustainable only if the abuser intended both the act and the result. 197 Wn. App. at 551. The results, of course, are those statutory harms listed in RCW 74.34.020(2) (injury, unreasonable confinement, intimidation or punishment). Our discussion of abuse in *Karanjah* reflects that principle. 199 Wn. App. at 915. However, no *physical abuse* case holds that bodily injury is required to sustain a finding of abuse. *Brown*, 145 Wn. App. at 183; *Karanjah*, 199 Wn. App. at 923-24. Specifically,

the court in *Brown* acknowledged that abuse can occur when an abuser willfully inflicts injury or unreasonable confinement. 145 Wn. App. at 183. Likewise, in *Karanjah*, we acknowledged that "[p]hysical abuse requires a finding of a willful action that inflicts bodily injury *or physical mistreatment*." 199 Wn. App. at 922-23 (emphasis added). Indeed, the plain language of the statutory definition of physical abuse encompasses instances where bodily injury does not result, as explained above.

Because *Brown*, *Karanjah*, and *Crosswhite* conclude that abuse occurs when an abuser willfully inflicts one of the statutory harms listed in RCW 74.34.020(2), and because physical abuse does not necessarily require actual bodily injury, we reject Lynn's argument that actual bodily injury is required to sustain a finding of physical abuse. Accordingly, Lynn's argument fails.

F. The BOA Did Not Err By Declining To Apply *Brown* Or *Karanjah*.

Lynn argues that the facts of her case are analogous to *Karanjah*, 199 Wn. App. 903, and *Brown*, 145 Wn. App. 177, and therefore, the BOA erred by failing to apply the holdings of those cases in its final order. We disagree.

1. *Brown v. Department of Social and Health Services*

In *Brown*, DSHS initially found that Laurie Brown, a care provider for developmentally disabled people, abused a vulnerable adult. 145 Wn. App. at 181. In that case, Brown observed a resident, named L., who was known to be verbally abusive and aggressive, attempt to kick her roommate, named S. *Id*. at 180. L. threatened to kill S. *Id*. Another staff member tried to redirect L., but she hit the staff member, knocked off her glasses, and swore at her. *Id*. Brown intervened, pushed L. onto a bed, and held her down for short period of time. *Id*.

L. then observed Brown talking to S., and L. again went after S. *Id*. L. began to hit and scratch Brown because of her intervention. *Id*. She repeatedly threatened to kill S. *Id*. L. grabbed onto Brown's wrists, and Brown dislodged her grip by performing a release move. *Id*. at 181. L. fell to the ground, but again went after S. *Id*. Brown again intervened. *Id*. She grabbed L. with both hands, put her foot and leg behind L.'s legs, and pushed her onto the grass. *Id*. Brown held L. there until she agreed to calm down. *Id*.

On appeal, Division Three of this court held that Brown did not commit physical abuse. *Id*. at 183. The court reasoned that Brown's actions were not improper because she intervened in the presence of danger to herself, her co-workers, and another vulnerable adult resident. *Id*. Based on the surrounding circumstances, Brown's actions were instead "protective, not injurious or ill-intended, thus they were warranted and not abusive." *Id*.

### 2. *Karanjah v. Department of Social and Health Services*

In *Karanjah*, DSHS issued a notice of preliminary finding that Alice Karanjah physically abused a vulnerable adult, I. 199 Wn. App. at 909. I. was known to be inappropriate in his actions and could be very aggressive and combative. *Id*. at 907. On the day of the incident giving rise to the allegation of physical abuse, Karanjah heard a trainee caregiver call for help. *Id*. at 908. I. and the other caregiver were in the utility room used for soiled items. *Id*. I. wore only a t-shirt and a diaper. *Id*. I. held onto the caregiver's wrist and tried to hit her. *Id*. Soiled diapers were all over the floor because I. had pulled them out of the garbage can. *Id*. He had fecal matter on his hands. *Id*. Karanjah managed to convince I. to let go of the caregiver. *Id*.

Witnesses then observed Karanjah interlock I.'s hands behind his back and push or shove him down a 200-foot long hallway to his room. *Id*. One witness observed I. flailing his arms as Karanjah pushed him. *Id*. I. hit his left wrist on the doorjamb of his room. *Id*. The witness also

saw Karanjah close the door and walk away. *Id*. The testimony also established that I. had a red wrist that started to swell. *Id*.

On appeal, we held that Karanjah did not commit physical abuse. *Id*. at 924. Specifically, we reasoned that, "Karanjah's actions were clearly protective and not knowingly injurious or ill-intended. Nothing in the record supports a conclusion that her actions were ill-intended." *Id*. We further reasoned that Karanjah's actions were not abusive because, "[w]hen viewed in the context of [I.'s] history and Karanjah's duty to prevent him from going into other residents' rooms and spreading fecal matter, she acted reasonably." *Id*.

### 3. *Brown* and *Karanjah* are Distinguishable.

Here, Lynn's reliance on *Brown* and *Karanjah* are misplaced because the surrounding circumstances demonstrate that her actions were not a protective intervention in the presence of danger to herself or others, but were instead ill-intended and therefore abusive. Accordingly, we conclude that Lynn's reliance on *Brown* and *Karanjah* is misplaced. The BOA did not err by declining to apply those cases in its final order.

## IV. ARBITRARY AND CAPRICIOUS

Lynn argues that the BOA's order should be reversed because it is arbitrary and capricious. We disagree.

We review whether an agency decision is arbitrary and capricious de novo. *Wash. Indep. Tel. Ass'n v. Wash. Utils. & Transp. Comm'n*, 149 Wn.2d 17, 24, 65 P.3d 319 (2003). An agency's action is arbitrary or capricious if it "'is willful and unreasoning and taken without regard to the attending facts or circumstances.'" *Wash. Indep. Tel.*, 149 Wn.2d at 26 (internal quotation marks omitted) (quoting *Rios v. Dep't of Labor & Indus.*, 145 Wn.2d 483, 501, 39 P.3d 961 (2002)). "'Where there is room for two opinions, an action taken after due consideration is not arbitrary

and capricious.'" *Pac. Coast Shredding, LLC v. Port of Vancouver*, 14 Wn. App. 2d 484, 502, 471 P.3d 934 (2020) (internal quotation marks omitted) (quoting *PacifiCorp v. Wash. Utilites & Transp. Comm'n*, 194 Wn. App 571, 587, 376 P.3d 389 (2016)). "The scope of review under the arbitrary and capricious standard 'is very narrow' and 'highly deferential' to the agency, and the party challenging an agency decision carries 'a heavy burden.' *King County Pub. Hosp. v. Dep't of Health*, 167 Wn. App. 740, 749, 275 P.3d 1141 (2012) (internal quotation marks omitted) (quoting *Alpha Kappa Lambda Fraternity v. Wash. State Univ.*, 152 Wn. App. 401, 418-22, 216 P.3d 451 (2009)).

In this case, Lynn fails to show that the BOA's final order was willful and unreasoning or resulted from a disregard of the facts and attendant circumstances. Specifically, the BOA gave due regard to the findings of the ALJ below. The BOA entered its own findings of fact and conclusions of law based on the record before them. Those findings and conclusions were well-reasoned, supported by the record, and not erroneous. Therefore, we hold that the BOA's final order is not arbitrary and capricious. *See Karanjah*, 199 Wn. App. at 925. Accordingly, Lynn's argument fails.

V.    ATTORNEY FEES

Lynn argues that she is entitled to an award of attorney fees under RAP 18.1(a) and the Equal Access to Justice Act (EAJA), chapter 4.84 RCW. We deny Lynn's request.

Under RAP 18.1(a), we may award attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review." The EAJA provides that,

> Except as otherwise specifically provided by statute, a court shall award a qualified party that *prevails in a judicial review of an agency action* fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. *A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought*.

22

RCW 4.84.350(1) (emphasis added).

Here, we affirm the BOA's final order. Therefore, Lynn is not the prevailing party because she did not obtain relief on a significant issue. RCW 4.84.350(1). Accordingly, we deny Lynn's request for attorney fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Worswick, P.J.

_____
Cruser, J.